# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR FOOD SAFETY, | ) | |
| 660 Pennsylvania Ave SE #402 | ) | |
| Washington, DC 20003 | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 21-1305 |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **AND INJUNCTIVE RELIEF** |
| U.S. ARMY CORPS OF ENGINEERS | ) | |
| 441 G Street NW | ) | |
| Washington, DC 20001 | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## INTRODUCTION

1.      The Center for Food Safety (CFS)—a nonprofit public interest and environmental advocacy organization working to protect public health and the environment—brings this civil action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, challenging Defendant U.S. Army Corps of Engineers (USACE) failure and refusal to provide records to CFS in response to the requests for records submitted on October 27, 2020 and October 30, 2020, for which there are no applicable exemptions under FOIA.

2.      Since its inception in 1997, CFS has closely monitored USACE's decision-making process in regards to its regulatory authority over commercial shellfish aquaculture, which could adversely affect human health, animal welfare, and the environment. As part of this oversight and advocacy strategy, CFS has submitted requests for records to USACE regarding USACE's regulation of commercial shellfish operations in accordance with its obligations under the Clean Water Act (CWA) and the Endangered Species Act (ESA) when issuing "letters of permission" (LOP) to Nationwide Permit 48 (NWP 48) authorization holders under FOIA, 5 U.S.C. § 552(a)-(m). The goal of the request was to open the operations and activities of the government to public scrutiny and contribute significantly to the public's understanding of the agency's actions.

3.      CFS filed the disputed FOIA request with USACE to gain a better understanding of USACE's regulatory oversight of commercial shellfish aquaculture pursuant to the agency's duties under Section 404 of the CWA, as well as its compliance with the ESA.

4.      Although FOIA requires USACE to release responsive records "promptly," USACE failed to comply with FOIA's statutory deadlines with respect to CFS's requests. Consequently, USACE has improperly withheld responsive records, depriving CFS of its statutory

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    2

right to obtain records containing crucial information concerning the nature of USACE's

decision-making process in determining whether to issue LOPs to commercial shellfish operations

in Washington, and USACE's compliance with the CWA and ESA.

5.      USACE is also violating FOIA by failing to conduct an adequate search for

responsive records, and by failing to provide CFS with both an initial determination as to the

scope of the records to be produced or withheld, and an estimated date by which the agency's

search will be complete.

6.      USACE's unlawful withholding of public records undermines FOIA's basic

purpose of government transparency. Because prompt access to these records is necessary to

effectuate FOIA's purpose, CFS respectfully asks this Court to enjoin USACE from withholding

requested records, order USACE to release improperly withheld records, and grant declaratory

relief.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. § 1331.

8.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.

§ 1391(e).

9.      Declaratory relief is appropriate under 28 U.S.C. § 2201.

10.     Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §

2202.

## PARTIES

11.      Plaintiff CFS is a national 501(c)(3) nonprofit public interest and environmental advocacy organization that empowers people, supports farmers, and protects the environment. CFS is a membership based nonprofit organization with over 970,000 members that works to address the impacts of the food system on public health, animal welfare, and the environment. CFS often uses information requests to challenge government abuses and corporate wrongdoing, advocate for policy change, and educate the public about the harms of industrial agriculture. Through nearly two decades of involvement in public interest and environmental litigation and policymaking as it relates to food, CFS has demonstrated its ability to take technical information provided by government agencies and distill it into a format that is accessible to the public. CFS employs science and policy experts who have analyzed FOIA, federal environmental laws, and environmental and scientific reports for their entire careers. CFS puts out reports on a range of food and agriculture topics, including genetically engineered foods, aquaculture, pesticides, food and feed additives, organic standards, and other topics that tend to be difficult for the layperson to understand without professional assistance. CFS has been engaged in ongoing efforts to educate our members and the public about the ongoing harms of aquaculture, including the impacts of commercial shellfish aquaculture in Washington on native wildlife as well as nearshore ecosystems of Washington. CFS and its members are harmed by USACE's violations of FOIA, as such violations preclude CFS from gaining a full understanding of the decision-making process regarding the underlying agency actions, and prevent CFS from disseminating information to the public concerning USACE's oversight and regulatory power over commercial shellfish aquaculture in Washington.

12.    Defendant USACE is an agency of the United States Government within the U.S. Department of Defense. USACE is in possession and control of the records that CFS seeks, and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). USACE is responsible for the oversight of commercial shellfish aquaculture in Washington. Thus, USACE is the "agency" that has control and possession of the requested "record[s]." 5 U.S.C. § 552(f)(2).

## STATUTORY BACKGROUND

13.    The basic purpose of FOIA is to promote government transparency and public oversight of agency action. *See, e.g.*, *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (noting that "disclosure, not secrecy is the dominant objective of the Act"). The statute effectuates this objective by establishing the public's right "to pierce the veil of administrative secrecy" and access all federal agency records, *id.*, unless such records may be withheld pursuant to one of nine, narrowly construed exemptions. *See* 5 U.S.C. § 552(b)(1)-(9).

14.    FOIA imposes stringent deadlines on federal agencies with regard to making initial determinations in response to FOIA requests. Within twenty working days of receiving a FOIA request, an agency must determine whether it will release the requested records, and must notify the requester of its determination, the reasons for its decision, and the requester's right to appeal an adverse decision to the head of the agency. *Id.* § 552(a)(6)(A).

15.    Congress has specified certain limited instances in which federal agencies may extend this twenty-working-day deadline. First, an agency may toll the deadline to seek additional information or clarification from a requester, but that tolling period ends when the agency receives such information or clarification. *Id.* § 552(a)(6)(A)(ii). Second, in "unusual circumstances" an agency may extend the deadline no more than ten additional working days by providing written

notice to the requester that sets forth the circumstances justifying the extension. *Id.* §
552(a)(6)(B)(i).

16.     FOIA requires that an initial determination under 5 U.S.C. § 552(a)(6)(A) "must
be more than just an initial statement that the agency will generally comply with a FOIA request
and will produce non-exempt documents and claim exemptions in the future." *Citizens for
Responsibility & Ethics in Wash. v. Fed. Election Comm'n (CREW)*, 711 F.3d 180, 188 (D.C. Cir.
2013).

17.     If an agency does not comply with "FOIA's explicit timelines [for making an initial
determination], the penalty is that the agency cannot rely on the administrative exhaustion
requirement to keep cases [out of] court." *Id.* at 190-91; *see also* 5 U.S.C. § 552(a)(6)(C)(i) (stating
that if an agency fails to respond within the applicable time limits under FOIA, the requester
"shall be deemed to have exhausted his administrative remedies."). The requester thus has
"immediate recourse to the courts to compel the agency's response to [her] FOIA request[s]."
*Oglesby v. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990).

18.     For a determination to "trigger the administrative exhaustion requirement," the
agency must complete "at least" three substantive requirements: "(1) gather and review the
documents; (2) determine and communicate the scope of the documents it intends to produce and
withhold, and the reasons for withholding any documents; and (3) inform the requester that it can
appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188; *see also
Oglesby*, 920 F.2d at 67 (finding that an agency's response did not trigger the exhaustion
requirement because "merely inform[ing] [the requester] that he could call the agency for further
information...did not qualify as notice of...right to appeal").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                          6

19.     With regard to production of responsive records, "FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188 (citing 5 U.S.C. § 552(a)(3)(A), (6)(C)(i)); *see also Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494  (D.C. Cir. 1988) (holding that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.").

20.     FOIA also requires that the agency provide requestors "information about the status of a request...including...an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii).

21.     In addition, FOIA provides a waiver for fees associated with the procurement of documents subject to FOIA requests. FOIA requires agencies to waive fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

22.     FOIA further requires each agency to "make reasonable efforts to search for [responsive] records," *id.* § 552(a)(3)(C)-(D), in a manner that is "reasonably calculated to uncover *all* relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (emphasis added); *see also Oglesby*, 920 F.2d at 68 (An "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.").

23.     Similarly, "if an agency has reason to know that certain places may contain responsive documents," the agency is required to search those places. *Valencia-Lucena v. U.S. Coast*

*Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999); *Pub. Emps. for Env't Resp. v. EPA*, 314 F. Supp. 3d 68, 75 (D.D.C. 2018) (holding that "if an agency has reason to know that certain places may contain responsive documents, it is obligated…to search" under FOIA).

24.     An agency bears the burden to demonstrate with reasonable detail that the "search terms and type of search performed" was likely to uncover *all* responsive records. *Oglesby*, 920 F.2d at 68; *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (holding that an agency must provide affidavits explaining "what records were searched, by whom, and through what process" to satisfy the agency's burden); *Int'l Couns. Bureau v. DOD*, 101 F. Supp. 3d 48, 51 (D.D.C. 2015). ("Conclusory statements that the agency has reviewed relevant files are insufficient.").

25.     The agency must also demonstrate that the scope of the agency's search was adequate. When tailoring the scope of the search, "an agency also has a duty to construe a FOIA request liberally." *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). FOIA's requirement that "a request for disclosure specify 'identifiable records' calls for 'a reasonable description'" allowing agency personnel to locate the records sought, but cannot "be used as a method of withholding records." *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir. 1970); *Yagman v. Pompeo*, 868 F.3d 1075, 1079 (9th Cir. 2017) (holding that the scope of a request is clear if it provides "*some* reasonable description" of the requested records, such as times, dates, locations, types of documents, or types of information) (emphasis in original); *see also Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (holding that the "reasonable-description requirement" under FOIA, "does not doom requests that *precisely* describe the records sought, even if compliance might overwhelm an agency's response team") (emphasis in original).

26.     After an agency identifies a responsive record, the agency must disclose the entire record "as a unit," unless a statutory exemption allows the agency "to redact specific information within [the record]." *Am. Immigr. Law. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 677 (D.C. Cir. 2016); *see also* 5 U.S.C. § 552(a)(3)(A), (d). The agency may not "redact particular information within the responsive record on the basis that the information is non-responsive." *Am. Immigr. Law. Ass'n*, 830 F.3d at 678.

27.     In certain limited instances, an agency may withhold records or portions of records pursuant to nine specific exemptions. 5 U.S.C. § 552(b). These exemptions "were explicitly made exclusive" and "must be narrowly construed" in keeping with FOIA's presumption in favor of disclosure. *Milner v. Dep't of Navy*, 562 U.S. 562, 566 (2011).

28.     An agency can only withhold information in a responsive record "if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in [FOIA]" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A).

29.     FOIA places the burden on the agency to prove that it may withhold responsive records or portions of records from a requester. *Id.* § 552(a)(4)(B). In order to satisfy this burden, the agency must submit affidavits that "describe the documents and the justifications for nondisclosure with reasonably specific detail," and "demonstrate that the information withheld logically falls within the claimed exemption." *Int'l Couns. Bureau v. DOD*, 657 F. Supp. 2d 33, 38 (D.D.C. 2009). An agency fails to satisfy this burden if its affidavit is refuted "by contrary evidence in the record" or "by evidence of agency bad faith." *Id.*

30.     Moreover, if information contained in a document falls within one of FOIA's enumerated exemptions, an agency may not simply withhold the entire document. *See Jud. Watch,*

*Inc. v. HHS*, 27 F. Supp. 2d 240, 246 (D.D.C. 1998) (observing that courts must "make specific findings as to the extent to which nonexempt responsive material might be 'segregated' from exempt materials and released") (citing *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993)). An agency is required to take reasonable steps to segregate and disclose *all* reasonably segregable portions of a withheld document. *See Krikorian*, 984 F.2d at 466 (holding that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA."); 5 U.S.C. § 552(a)(8)(A)(ii).

31.     If an agency cannot adequately justify withholding records in full or in part, FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

32.     Finally, this Court also "has the authority to oversee and supervise the agency's progress in responding to the request." *Seavey v. DOJ*, 266 F. Supp. 3d 241, 244 (D.D.C. 2017) (citing *CREW*, 711 F.3d at 189); *see also Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline.").

## FACTUAL BACKGROUND

33.     CFS, through its aquaculture program, works to protect human health, animal welfare, and the environment from the adverse impacts associated with industrial aquaculture. CFS also works to maintain strong government regulations and policies related to commercial shellfish aquaculture operations. To fulfill such objectives, CFS submitted to USACE two FOIA requests concerning the nature of USACE's decision-making process in regard to its issuance of

LOPs to commercial shellfish aquaculture operations in Washington on October 27, 2020 and

October 30, 2020.

### October 27, 2020 Request (FA-21-017)

34.     On October 27, 2020, CFS submitted to USACE a FOIA request for:

All documents related to "letters of permission" (LOP) issued to
commercial shellfish aquaculture operations, including but not limited to:

1. Any LOPs issued and any conditions attached to any former or current
   Nationwide Permit 48 (NWP 48) authorization holders from June 11,
   2020 to present;

2. Any LOPs issued and any conditions attached to any former or current
   NWP 48 authorization holders between April 1, 2017 and June 10,
   2020;

3. Any documents between October 10, 2019 and present that discuss in
   any way the use of LOPs, including but not limited to: (1) any list(s) of
   LOPs issued; (2) any jurisdictional determinations by the Corps as to
   whether an individual permit under the Clean Water Act or LOP is
   appropriate for the individual operations; and (3) any environmental
   assessments conducted for individual or combined LOPs (including any
   cumulative impacts assessments); and

4. Any documents prior to October 10, 2019 that discuss the use of LOPs,
   including but not limited to: (1) any list(s) of LOPs issued; (2) any
   jurisdictional determinations by the Corps as to whether an individual
   permit under the Clean Water Act or LOP is appropriate for the
   individual operations; and (3) any environmental assessments
   conducted for individual or combined LOPs (including any cumulative
   impacts assessments).[1]

---

[1] In CFS's October 27, 2020 FOIA Request, CFS explained that "'[a]ll documents' includes but is
not limited to all correspondence, minutes, memoranda, communications and/or other
documents received from or given to other agencies, maps, plans, drawings, emails, reports,
databases, and phone notes. This request includes all documents that have ever been within your
custody or control, whether they exist in agency 'working,' investigative, retired, electronic mail, or
other files currently or at any other time."

Agency FOIA Tracking Number FA-21-017 (October 27, 2020 FOIA Request). CFS explained that

release of the requested records was in the public's best interest because disclosure would

significantly contribute to public understanding of the operations or activities of government, and

because obtaining the information was of no commercial interest to CFS.

35.      An initial determination on the October 27, 2020 FOIA Request was due by

November 25, 2020, twenty working days after the date CFS submitted the request.

36.      On October 28, 2020, USACE sent an email acknowledging the receipt of CFS's

October 27, 2020 FOIA Request, and assigned the request Tracking Number FA-21-017. The

email also stated that "[USACE is] reviewing [CFS's] request to determine if it reasonably describes

the records [CFS] seek[s]," and that "[USACE] will respond shortly after contacting [USACE's]

records custodians." Additionally, USACE stated that it is "reviewing [CFS's] request for a fee

waiver and…will advise if there is additional information [USACE] need[s] to make [its]

determination."

37.      CFS emailed USACE on November 28, 2020, informing USACE that "the agency

was required to provide CFS with an initial determination within 20 working days of its receipt of

CFS's October 27 request, which was November 25, 2020." CFS further explained that USACE's

October 28, 2020 response "[did] not qualify as an initial determination under 5 U.S.C. §

552(a)(6)(A)," and requested that the agency "provide CFS with an adequate initial determination"

including: "(1) 'the agency's determination of whether or not to comply with the request', (2) 'the

reasons for its decision', and (3) 'notice of the right of the requester to appeal to the head of the

agency if the initial agency decision is adverse.'" (Citing *Oglesby*, 920 F.2d at 65; *CREW*, 711 F.3d

at 188 (holding that a determination under 5 U.S.C. § 552(a)(6)(A) "must be more than just an

initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future.")). In addition, CFS asked that the agency also provide an estimated completion date as required by FOIA, 5 USC § 552(a)(7)(B)(ii).

38.     In response to CFS's November 28, 2020 inquiry, USACE emailed CFS on December 1, 2020 and December 14, 2020, requesting clarification regarding CFS's October 27, 2020 FOIA Request in an attached letter in which USACE stated that CFS's request was "overly broad and complex," and therefore, the scope of the request needed clarifying.

39.     On December 15, 2020, CFS requested a phone call with USACE to discuss the agency's clarification letter.

40.     During a phone call with USACE on December 22, 2020, CFS and USACE discussed CFS clarifying the scope of its October 27, 2020 FOIA Request. In addition, USACE notified CFS that due to the closure of the National Archives and Records Administration (NARA) in Seattle, Washington, all records responsive to CFS's October 27, 2020 FOIA Request located at NARA could not be accessed at this time. That same day, CFS sent an email clarifying the scope of its October 27, 2020 FOIA Request, to:

> All documents related to "letters of permission" (LOP) and their associated project/permit file issued to commercial shellfish aquaculture operations, specifically:
>
>    1.  Any LOPs issued and any conditions attached to any former or current Nationwide Permit 48 (NWP 48) authorization holders from June 11, 2020 to present; [and]
>
>    2.  Any LOPs issued and any conditions attached to any former or current NWP 48 authorization holders between April 1, 2017 and present.[2]

---

[2] In CFS's same December 22, 2020 clarification email, CFS also narrowed "[a]ll documents" to "include[] but is not limited to all correspondence, minutes, memoranda, communications and/or other documents received from or given to other agencies, including any environmental assessments conducted for individual or combined LOPs (including any cumulative impacts

41.     On January 6, 2021, USACE sent an email to CFS stating that CFS's December 22, 2020 email clarifying the scope of CFS's October 27, 2020 FOIA Request "was very helpful in interpreting [CFS's]...request."

42.     On February 19, 2021, CFS emailed USACE inquiring about CFS's October 27, 2020 FOIA Request's production and estimated completion date. CFS stated in the email that it wanted to "follow up with [USACE] regarding...FOIA request[]...FA-21-017," since "[it has] been a little over 3 weeks since [CFS] last touched base about [the] request[]." CFS explained that "[a]t this time, CFS still [has not] received an initial determination from the agency or an estimated completion date for...[this] request[] as required under FOIA." (Citing 5 U.S.C. § 552(a)(6)(A)(i), (7)(B)(ii)). CFS's email also reminded USACE that CFS "is open to receiving responsive records on a rolling production schedule for" its October 27, 2020 FOIA Request. CFS concluded the email by asking USACE to provide CFS with a status update on the October 27, 2020 FOIA Request.

43.     USACE responded to CFS's February 19, 2021 email on February 20, 2021, stating the following:

> In response to [CFS's] request for status update for FOIA FA-21-017, [USACE is] afforded twenty business days and ten additional business days beyond that, if needed, in accordance with Army Regulations and the FOIA. The date [CFS's] request was perfected was the date [CFS] provided the clarification, on December 22, 2020. [USACE] did need to take the ten business day extension, and [USACE] apologize[s] for not advising [CFS] sooner. The 30th business day was February 16, 2021 (as December 24, 2020 was a Federal Holiday). [USACE] received records from the custodian for [CFS's] request on February 12, 2021. [USACE] will process records for the 4 permits received as soon as [USACE is] able. It is incredibly difficult to provide an exact date as there are many FOIAs pending before [USACE] received [CFS's] request. [USACE] hope[s] to have a rolling release available within the next few weeks.

_____

assessments), maps, plans, drawings, emails, reports, databases, and phone notes. At this time, due to the closure of the National Archives and Records Administration (NARA) in Seattle, all records responsive to this request located in NARA are omitted."

44.     On March 4, 2021, CFS emailed USACE requesting another update regarding CFS's October 27, 2020 FOIA Request, Tracking Number FA-21-017, including the number of responsive records included in the four permits USACE stated it received on February 12, 2021, in USACE's February 20, 2021 email to CFS. That same day, USACE replied, stating that "[t]here are over 20 FOIAs received before [CFS's] request[] and in accordance with Army Regulations and the FOIA, [USACE] process[es] each FOIA in the order received. [USACE is] hoping to provide a response to [CFS] as soon as [USACE has] completed the reviews of the four permits. At this time, [USACE is] not able to provide a page count."

45.     CFS emailed USACE again on March 30, 2021, requesting another status update regarding CFS's October 27, 2020 FOIA Request, including an estimated date in regards to when CFS could expect to start receiving records for its October 27, 2020 FOIA Request.

46.     On April 2, 2021, USACE responded to CFS's March 30, 2021 email stating that the only FOIA officer for USACE's Seattle District was on emergency medical leave for two weeks and was unable to review the records because of being on leave, and that the FOIA officer hopes to begin review during April.

47.     On April 7, 2021, CFS emailed USACE explaining that the documents related to CFS's October 27, 2020 FOIA Request are "critically important to CFS's work," and "[t]hus, in an effort to get these documents as quickly as possible, [CFS] request[s] that the agency agree to a rolling production for [CFS's October 27, 2020 FOIA Request]." Additionally, CFS stated that it "would be open to the agency starting to produce documents by permit file."

48.     Six months, fourteen days have passed since CFS submitted its October 27, 2020 FOIA Request to USACE, and the agency has not provided an initial determination in response

to the October 27, 2020 FOIA Request, supplied an estimated date of completion, or produced

any responsive records. USACE has failed to provide a determination describing the scope of the

records it intends to produce or withhold, the reasons for withholding any records, or informed

CFS that it may appeal any specific adverse determination within the relevant time period in 5

U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).

49.     CFS is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C.

§ 552(a)(6)(C)(i).

50.     As of the date of this complaint, CFS has received no further communications

from USACE.

51.     None of FOIA's nine exemptions to the statute's disclosure mandate apply to the

records that are responsive to the October 27, 2020 FOIA Request.

52.     CFS has been required to expend resources to prosecute this action.

### October 30, 2020 Request (FA-21-019)

53.     On October 30, 2020, CFS submitted to USACE a FOIA request for, "[a]ny and

all documents from October 10, 2019 to present regarding impacts to threatened and endangered

species from commercial shellfish aquaculture permitted by the Army Corps of Engineers,

including but not limited to Corps 'letters of permission' (LOP) issued to commercial shellfish

aquaculture operations."[3] Agency FOIA Tracking Number FA-21-019 (October 30, 2020 FOIA

Request). CFS explained that release of the requested records was in the public's best interest

---

[3] In CFS's October 30, 2020 FOIA Request, CFS explained that "'[a]ll documents' includes but is
not limited to all correspondence, minutes, memoranda, communications and/or other
documents received from or given to other agencies, maps, plans, drawings, emails, reports,
databases, and phone notes. This request includes all documents that have ever been within your
custody or control, whether they exist in agency 'working,' investigative, retired, electronic mail, or
other files currently or at any other time."

because disclosure would significantly contribute to public understanding of the operations or activities of government, and because obtaining the information was of no commercial interest to CFS.

54.     An initial determination on the October 30, 2020 FOIA Request was due by December 2, 2020, twenty working days after the date CFS submitted the request.

55.     On December 3, 2020, USACE sent an email acknowledging the receipt of CFS's October 3, 2020 FOIA Request, and assigned the request Tracking Number FA-21-019. USACE also notified CFS in the same email that it was taking a ten business day extension for CFS's October 30, 2020 FOIA Request until December 15, 2020.

56.     On January 6, 2021, USACE emailed CFS requesting that the parties schedule a phone call to help clarify the scope of CFS's October 30, 2020 FOIA Request, Tracking Number FA-21-019.

57.     On January 21, 2021, CFS and USACE had a phone call to discuss clarifying the scope of CFS's October 30, 2020 FOIA Request.

58.     On January 26, 2021, CFS sent an email clarifying the scope of its October 30, 2020 FOIA Request, to:

> Any and all documents from October 10, 2019 to present regarding impacts to threatened and endangered species from commercial shellfish aquaculture permitted by the Army Corps of Engineers  (USACE)—not including project specific discussions in the project permit file—related to the USACE's "letters of permission" (LOP) issued to commercial shellfish aquaculture operations in the State of Washington.[4]

---

[4] In CFS's same January 26, 2021 clarification email, CFS also narrowed "[a]ll documents" to "include[]but is not limited to all correspondence, minutes, memoranda, communications and/or other documents received from or given to other agencies, maps, plans, drawings, emails, reports, databases, and phone notes. This request includes all documents that have ever been within your custody or control, whether they exist in agency 'working,' investigative, retired, electronic mail, or other files currently or at any other time. Please note that this FOIA Request is intended for only

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                         17

That same day, USACE responded to CFS's email clarifying the scope of its October 30, 2020 FOIA Request stating that USACE will review and absent any questions, the agency "will forward to the custodian to gather responsive records."

59.     On January 27, 2021, CFS replied to USACE's January 26, 2021 email requesting that "[o]nce [USACE is] done reviewing the request language to determine if [it is] acceptable" to "please provide [CFS] with an estimated date of completion for" the October 30, 2020 FOIA Request. USACE responded that same day agreeing to provide CFS with "an update on time once [USACE] receive[s] all records from the custodians and can estimate the prior FOIAs pending review before [CFS's] review."

60.     On February 19, 2021, CFS emailed USACE inquiring about CFS's October 30, 2020 FOIA Request's production and estimated completion date. CFS stated in the email that it wanted to "follow up with [USACE] regarding...FOIA request[]...FA-21-019." CFS stated that "[a]t this time, CFS still [has not] received an initial determination from the agency or an estimated completion date for...[this] request[] as required under FOIA." (Citing 5 U.S.C. § 552(a)(6)(A)(i), (7)(B)(ii)). CFS's email also reminded USACE that CFS "is open to receiving responsive records on a rolling production schedule for" its October 30, 2020 FOIA Request. CFS concluded the email by asking USACE to provide CFS with a status update on the October 30, 2020 FOIA Request.

61.     USACE responded to CFS's February 19, 2021 email on February 20, 2021, stating the following:

> In response to [CFS's] request regarding the status of FOIA FA-21-019, [CFS's] request was perfected when we received your clarification on January 26, 2021. In accordance with Army Regulations and the FOIA, [USACE is] given 20 business

the Seattle District USACE FOIA office. Also, please note that CFS is open to a partial release of responsive documents, if there is to be a lengthy process. Accordingly, CFS would like the agency to prioritize non-NWP 48 materials, if necessary for a quicker release."

days to process [CFS's] request, which is February 24, 2021. [USACE] will provide
a rolling release once [USACE] receive[s] the records and the review is complete.
[USACE's] records custodian is still searching for responsive records to [CFS's]
request.

62.     On March 4, 2021, CFS emailed USACE requesting another update regarding

CFS's October 30, 2020 FOIA Request, Tracking Number FA-21-019, including the number of

responsive records that the agency has collected in response to CFS's October 30, 2020 FOIA

Request. That same day, USACE replied, stating that "[t]here are over 20 FOIAs received before

[CFS's] request[] and in accordance with Army Regulations and the FOIA, [USACE] process[es]

each FOIA in the order received. [USACE is] hoping to provide a response to [CFS] as soon as

[USACE has] completed the reviews of the records. At this time, [USACE is] not able to provide a

page count."

63.     CFS emailed USACE again on March 30, 2021, requesting another status update

regarding CFS's October 30, 2020 FOIA Request, including an estimated date in regards to when

CFS could expect to start receiving records for its October 30, 2020 FOIA Request.

64.     On April 2, 2021, USACE responded to CFS's March 30, 2021 email stating that

the only FOIA officer for the USACE's Seattle District was on emergency medical leave for two

weeks and was unable to review the records because of being on leave, and that the FOIA officer

hopes to begin review during April.

65.     On April 7, 2021, CFS emailed USACE explaining that the documents related to

CFS's October 30, 2020 FOIA Request are "critically important to CFS's work," and "[t]hus, in an

effort to get these documents as quickly as possible, [CFS] request[s] that the agency agree to a

rolling production for [CFS's October 30, 2020 FOIA Request]." Additionally, CFS stated that it

"would be open to the agency starting to produce documents by permit file."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    19

66.     Six months, eleven days have passed since CFS submitted its October 30, 2020 FOIA Request to USACE, and the agency has not provided an initial determination in response to the October 30, 2020 FOIA Request, supplied an estimated date of completion, or produced any responsive records. USACE has failed to provide a determination describing the scope of the records it intends to produce or withhold, the reasons for withholding any records, or informed CFS that it may appeal any specific adverse determination within the relevant time period in 5 U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).

67.     CFS is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

68.     As of the date of this complaint, CFS has received no further communications from USACE.

69.     None of FOIA's nine exemptions to the statute's disclosure mandate apply to the records that are responsive to the October 30, 2020 FOIA Request.

70.     CFS has been required to expend resources to prosecute this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

**Failure to Comply with FOIA's Mandatory Determination Deadline for CFS's FOIA Requests**

71.     Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

72.     USACE violated FOIA by failing to make a determination on CFS's October 27, 2020 FOIA Request, Tracking Number FA-21-017, and October 30, 2020 FOIA Request, Tracking Number FA-21-019. 5 U.S.C. § 552(a)(6).

73.     CFS has a statutory right to receive a determination within the congressionally mandated deadline of twenty working days. *Id.*

74.     More than six months has passed since CFS filed the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request. To date, USACE has not provided a determination, notwithstanding the requirement of 5 U.S.C. § 552(a)(6)(A) of an agency response within twenty working days detailing the scope of the records the agency intends to produce and withhold, the reasons for making that determination, and an explanation of the process by which a requester can administratively appeal that determination.

75.     Even accounting for a ten-working-day extension, USACE has still failed to meet the deadline by which an initial determination is required.

76.     USACE's failure to make an initial determination with regard to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request, thus unlawfully delaying its response beyond the deadline that FOIA mandates, has prejudiced CFS's ability to timely obtain public records. *Id.* § 552(a)(6)(A)(i).

77.     As such, CFS has exhausted the applicable administrative remedies with respect to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

78.     Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to USACE in the foreseeable future.

79.     CFS's organizational activities will be adversely affected if USACE continues to violate FOIA by failing to disclose responsive records as it has in this case.

80.     Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, USACE will continue to violate CFS's rights to receive public records under FOIA.

81.     CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## SECOND CLAIM FOR RELIEF:

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Failure to Conduct an Adequate Search for Responsive Records to CFS's FOIA Requests

82.     Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

83.     USACE violated FOIA by failing to conduct an adequate search for responsive records pursuant to 5 U.S.C. § 552(a)(3)(C)-(D).

84.     CFS has a statutory right to have USACE process its October 27, 2020 FOIA Request, Tracking Number FA-21-017, and October 30, 2020 FOIA Request, Tracking Number FA-21-019, in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3)(C)-(D).

85.     USACE violated CFS's right when it unlawfully failed to undertake a search that is reasonably calculated to locate all records that are responsive to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request, thus prejudicing CFS's ability to timely obtain public records.

86.     CFS has exhausted the applicable administrative remedies with respect to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

87.     Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to USACE in the foreseeable future.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    22

88.     CFS's organizational activities will be adversely affected if USACE continues to violate FOIA by failing to disclose responsive records as it has in this case.

89.     Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, USACE will continue to violate CFS's rights to receive public records under FOIA.

90.     CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## THIRD CLAIM FOR RELIEF:

### VIOLATION OF THE FREEDOM OF INFORMATION ACT
#### Failure to Disclose All Responsive Records to CFS's FOIA Requests

91.     Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

92.     USACE violated FOIA by failing to promptly disclose records that are responsive to CFS's October 27, 2020 FOIA Request, Tracking Number FA-21-017, and October 30, 2020 FOIA Request, Tracking Number FA-21-019. 5 U.S.C. § 552(a)(4)(B).

93.     CFS has a statutory right to the records it seeks, and there are no applicable exemptions under FOIA that provide a legal basis for USACE to withhold these records from CFS. *See id.* § 552(b)(1)-(9).

94.     To date, USACE has not provided any records requested by CFS in the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request, notwithstanding the requirement of 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(C) to make agency records "promptly available."

95.     As such, USACE is wrongfully withholding disclosure of information sought by CFS, information to which it is entitled and for which no valid disclosure exemption has been claimed. USACE's unlawful withholding prejudices CFS's ability to timely obtain public records.

96.     CFS has exhausted the applicable administrative remedies with respect to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

97.     Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to USACE in the foreseeable future.

98.     CFS's organizational activities will be adversely affected if USACE continues to violate FOIA by failing to disclose responsive records as it has in this case.

99.     Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, USACE will continue to violate CFS's rights to receive public records under FOIA.

100.    CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## FOURTH CLAIM FOR RELIEF:

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

**Failure to Provide Reasonably Segregable Portions of Any Lawfully Exempt Records to CFS's FOIA Requests**

101.    Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

102.    USACE violated FOIA by failing to take reasonable steps to segregate and release nonexempt portions of lawfully exempt records in response to the October 27, 2020 FOIA Request, Tracking Number FA-21-017, and October 30, 2020 FOIA Request, Tracking Number FA-21-019. 5 U.S.C. § 552(a)(8)(A)(ii)(II).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                     24

103.     CFS has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions. *Id.*

104.     To date, USACE has failed to disclose any records to CFS, including nonexempt information that could be reasonably segregated and released in response to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request, thus prejudicing CFS's ability to timely obtain public records.

105.     CFS has exhausted the applicable administrative remedies with respect to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

106.     Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to USACE in the foreseeable future.

107.     CFS's organizational activities will be adversely affected if USACE continues to violate FOIA by failing to disclose responsive records as it has in this case.

108.     Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, USACE will continue to violate CFS's rights to receive public records under FOIA.

109.     CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## FIFTH CLAIM FOR RELIEF:

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

**Failure to Provide an Estimated Date of Completion as Required by FOIA for CFS's FOIA Requests**

110.     Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

111.    USACE violated FOIA by failing to provide CFS with an estimated date of completion as required by 5 U.S.C. § 552(a)(7)(A)-(B).

112.    CFS has a statutory right to have USACE process its October 27, 2020 FOIA Request, Tracking Number FA-21-017, and October 30, 2020 FOIA Request, Tracking Number FA-21-019, in a manner which complies with FOIA. USACE has violated Plaintiff's rights in this regard by its failure to provide an adequate estimated completion date for its response to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request as required by FOIA. 5 U.S.C. § 552(a)(7)(A)-(B).

113.    USACE's failure to inform CFS of an estimated completion date for the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request has prejudiced CFS's ability to timely obtain public records.

114.    CFS has exhausted the applicable administrative remedies with respect to the October 27, 2020 FOIA Request and October 30, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

115.    Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to USACE in the foreseeable future.

116.    CFS's organizational activities will be adversely affected if USACE continues to violate FOIA by failing to disclose responsive records as it has in this case.

117.    Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, USACE will continue to violate CFS's rights to receive public records under FOIA.

118.    CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

1.      Declare that Defendant violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request;

2.      Declare that Defendant failed to make and communicate an initial determination regarding Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request;

3.      Declare that Defendant failed to conduct an adequate search for agency records responsive to Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request;

4.      Declare that Defendant unduly delayed actual production of records responsive to Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request;

5.      Declare that Defendant unlawfully failed to provide reasonably segregable portions of records which may be lawfully subject to a FOIA exemption to Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request;

6.      Declare that Defendant unlawfully failed to provide Plaintiff with an estimated date of completion as to the search and production of Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request;

7.      Order Defendant to provide a lawful initial determination on Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request;

8.      Order Defendant to conduct searches that are reasonably calculated to locate all records responsive to Plaintiff's October 27, 2020 FOIA Request and October 30, 2020 FOIA Request using search methods reasonably likely to lead to discovery of all responsive records;

9.      Order Defendant to produce, by a date certain, any and all nonexempt responsive records or segregable portion of the records and a *Vaughn* index of any responsive records or portion of responsive records withheld under a claim of exemption, at no cost to Plaintiff;

10.     Enjoin Defendant from continuing to withhold any and all nonexempt responsive records or segregable portion of the records;

11.     Retain jurisdiction of this action to ensure the processing of Plaintiff's FOIA requests and that no agency records or portion of the records are improperly withheld;

12.     Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

13.     Grant such other and further relief as the Court may deem just and proper.


Respectfully submitted this 11th day of May, 2021.

CENTER FOR FOOD SAFETY,

*/s/ George A. Kimbrell*
GEORGE A. KIMBRELL (WA 36050)
Center for Food Safety
2009 NE Alberta Street, Suite 207
Portland, Oregon 97211
(971) 271-7372
Email: gkimbrell@centerforfoodsafety.org

VICTORIA A. YUNDT (*Pro Hac Vice* Pending)
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: (415) 826-2770 / F: (415) 826-0507
Email: tyundt@centerforfoodsafety.org

*Counsel for Plaintiff*